# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ELVA BENSON, on behalf of**
**herself and on behalf of all others**
**similarly-situated,**

      **Plaintiff,**

**v.**                       **CASE NO.: 6:20-cv-891-Orl-37LRH**

**ENTERPRISE HOLDINGS, INC.,**
**and ENTERPRISE LEASING**
**COMPANY OF ORLANDO, LLC,**

      **Defendants.**

_____/

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Class Representative, Elva Benson ("Plaintiff"), pursuant to Fed.R.Civ.P. 23, files this Unopposed Motion for Preliminary Approval of the Parties' Class Action Settlement (the "Motion"), with incorporated Memorandum of Law, and seeks an Order: (1) preliminarily approving the Settlement Agreement between the Named Plaintiff, the certified class, and Defendant; (2) approving the form and manner of notice to the class; (3) scheduling a fairness hearing for the final consideration and approval of the Parties' settlement; and, finally, (4) approving the settlement in a subsequent Order. In support of this Motion, Plaintiff respectfully submits the following:

# I. **BRIEF OVERVIEW.**

## A. **Procedural Overview of the Litigation.**

Before the settlement was reached, both sides extensively litigated this case for nearly 1.5 years, including at the Eleventh Circuit Court of Appeals. This action commenced on May 27, 2020, when Plaintiff filed her class action complaint, *Benson, et al., v. Enterprise Holdings, Inc. et al.,* Case No. 6:20-cv-891, in the United States District Court for the Middle District of Florida, Orlando Division. (Doc. 1 - the "Action"). In the Complaint, Plaintiff alleged that Enterprise Holdings, Inc. ("EHI") and Enterprise Leasing Company of Orlando, LLC ("Enterprise Orlando"), (collectively referred to as "Defendants" or "Enterprise") violated the WARN Act by terminating her and the class members without sufficient notice. Defendants have, at all times, denied Plaintiff's allegations and denied that it violated the WARN Act.

Defendants filed a Motion to Dismiss (*see* Doc. 32) the Complaint on August 3, 2020, disputing that Plaintiff had pled the three named Defendants constituted a "single employer" under the WARN Act. Additionally, Defendants argued that even if Plaintiff had pled the identity of her employer and sufficient facts to conclude that it was subject to the WARN Act and had engaged in a plant closing or mass layoff—Defendants were excused from the WARN Act's notice requirement under both the unforeseeable business circumstance defense and natural disaster exception to the WARN Act's notice requirement.

Plaintiff filed her Amended Complaint (*see* Doc. 35) on August 17, 2020, which mooted the first Motion to Dismiss. (*See* Doc. 36). Plaintiff's First Amended Complaint added as Named Plaintiffs Patrina Moore and Elizabeth Daggs. Both Daggs and Moore were later voluntarily dismissed (*see* Docs. 53 and 62) because it was later determined they worked at Enterprise facilities not covered by the WARN Act.

Defendants moved to dismiss (*see* Doc. 42) the First Amended Complaint on September 14, 2020, raising many of the same arguments and defenses included in its prior Motion to Dismiss—along with some others.

Defendants also filed a Motion to Stay discovery pending resolution of the Motion to Dismiss the First Amended Complaint. (Doc. 45). The Court denied the Motion to Stay Discovery on October 29, 2020. (Doc. 52). The Parties then engaged in extensive discovery efforts—and continued doing so throughout this litigation. Both sides propounded interrogatories and requests for production. Additionally, Plaintiff sought leave to (and the Court permitted her to pursue) jurisdictional discovery from Defendants. (Doc. 75). Both sides also took multiple depositions, including as to both the Parties and relevant witnesses. The Parties' extensive discovery efforts allowed both sides to fully develop the record in this case for both class certification purposes and, ultimately, to help ensure a well-informed settlement was reached.

In the interim, on January 4, 2021, the Court denied Defendants' Motion to Dismiss the First Amended Complaint. (Doc. 61). Defendants filed a Motion (*see*

Doc. 69) to Certify for Interlocutory Review the Court's Order denying the Defendants' Motion to Dismiss the First Amended Complaint, which the Court granted by Order dated February 4, 2021. (Doc. 77). The Court certified the following question under § 1292(b): "What causal standard is required to establish that a plant closing or mass layoff is "due to any form of natural disaster" under the WARN Act's natural disaster exception, 29 U.S.C. § 2102(b)(2)(B)."

Defendants filed their 28 U.S.C. § 1292(b) Petition with this Court on February 12, 2021. This Court granted the Defendants' petition on June 4, 2021. On July 14, 2021, Defendants filed their Initial Brief with the Eleventh Circuit Court of Appeals. Additionally, the Defendants' brief was supported by several amici groups. Benson filed her Opposition Brief with the Eleventh Circuit on September 10, 2021. Benson also filed responses in opposition to each amicus brief filed in support of Defendants with the Eleventh Circuit.

Meanwhile, in these underlying District Court proceedings, Benson filed her Motion for Class Certification under Rule 23 on January 12, 2021. (Doc. 64). Defendants opposed Plaintiff's Motion for Class Certification (*see* Docs. 81-93), and also filed a Motion to Strike (*see* Doc. 80) the sworn declaration filed by Benson in support of her Motion for Class Certification. The Court denied the Motion to Strike filed by Defendants on March 15, 2021. (Doc. 101).

The Court heard oral argument on Plaintiff's Motion for Class Certification on April 1, 2021. (Doc. 106). On May 11, 2021, the Court granted Plaintiff's Motion for Class Certification and certified a nationwide class of approximately 964

persons who worked at various Enterprise locations around the country. Specifically, the Court certified (*see* Doc. 114, p. 26) the following class:

> All Enterprise employees who worked at or reported to Enterprise facilities in the United States and were terminated without cause on or about April 24, 2020, or within 14 days of April 24, 2020, or in anticipation of, or as the foreseeable consequence of, the mass layoff or plant closing ordered on or about April 24, 2020, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5), who do not file a timely request to opt-out of the class, and who also did not sign a severance agreement with Enterprise.

On May 25, 2021, Defendants filed their Petition for permission to appeal pursuant to 23(f) with the Eleventh Circuit Court of Appeals the District Court's Order granting Plaintiff's Motion for Class Certification. Plaintiff opposed Enterprise's Rule 23(f) Petition. The Eleventh Circuit denied Defendants' Rule 23(f) Petition on June 23, 2021.

On September 14, 2021, the Parties participated in a Court-Ordered mediation with highly-respected mediator Carlos J. Burruezo. During mediation, and with Mr. Burruezo's assistance, the Parties were able to reach a settlement on a class basis, contingent upon this final agreement and the Parties' class action settlement being approved by the Court. (*See* Docs. 121, 122).

If approved here, the settlement provides for immediate relief to approximately 964 Settlement Class Members. Defendant will make available the gross sum of $175,000.00 into a common fund. That amount will be allocated among the approximately 964 class members equally on a pro rata basis based on the number of valid claim forms filed by class members after the cost of

administration costs and litigation costs are deducted. No money from the Settlement Fund shall revert to Enterprise. For example, if the Net Settlement Fund is $150,000.00 and 120 Settlement Class Members timely submit claims, the individualized Settlement Payment shall be $1,250.00.

In sum, based on the extensive record developed in this case, coupled with the experience and judgment of experienced class counsel, Ms. Benson and her counsel respectfully submit that the terms and conditions of this Agreement are fair, reasonable, and adequate. Thus, Plaintiff respectfully asks that this settlement be approved.

### B.    Mediation And Settlement Agreement.

As explained above, on September 14, 2021, the Parties mediated this case with the assistance of mediator, Carlos J. Burruezo. The Parties' efforts culminated in a class-wide resolution that, if approved, will resolve the claims of each of the 964 Class Members. Importantly, the 964 class members who comprise the settlement class are the same class members who make up the Class Certified by this Court's order granting Plaintiff's Motion for Class Certification. The Parties' Class Settlement Agreement is attached to this motion as Exhibit A (the "Agreement"). The settlement class is defined as follows:

> **Settlement Class:**
> All Enterprise employees who worked at or reported to Enterprise facilities in the United States and were terminated without cause on or about April 24, 2020, or within 14 days of April 24, 2020, or in anticipation of, or as the foreseeable consequence of, the mass layoff or plant closing ordered on or about April 24, 2020, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5), who

do not file a timely request to opt-out of the class, and who also did not sign a severance agreement with Enterprise.

The Agreement, subject to Court approval, provides for settlement under the following key terms:

- Enterprise agrees to make available a gross Settlement Fund in the amount of $175,000.00;

- Every Settlement Class Member who timely submits a claim will receive a payment from the Settlement Fund. The Settlement Payment shall be determined by dividing the amount in the Net Settlement Fund by the number of Settlement Class Members that have filed a Claim Form. For example, if the Net Settlement Fund is $150,000.00 and 120 Settlement Class Members timely submit claims, the individualized Settlement Payment shall be $1,250.00;

- Payment from the Settlement Fund of the cost of notice and administration of approximately $16,500 and Class Counsel's reasonable litigation costs in an amount of $7,185.40; and, finally,

- An additional but separate payment by Defendants of Class Counsel's attorneys' fees, subject to Court approval, up to $250,000.00.

## II.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED.

### A.   The Law Governing Preliminary Approval of Class Action Settlements.

The Eleventh Circuit has recognized that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *see also Gevaerts v. TD Bank, N.A.*, 2015 WL 6751061, at *4 (S.D. Fla. Nov. 5, 2015) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements."). Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the

efficient utilization of scarce judicial resources and achieve the speedy resolution of justice...." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (citations omitted). As a general matter, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Alba Conte & Herbert Newberg, Newberg on Class Actions §11.50, at 155 (4th ed. 2002).

"At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the 'range of reasonableness.'" 4 Newberg on Class Actions § 11.26 (4th ed. 2010). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010)." *Almanzar v. Select Portfolio Servicing, Inc.*, 2015 WL 10857401, at *1 (S.D. Fla. Oct. 15, 2015). This district has set forth the following process for preliminary approval of a class action settlement:

> Rule 23(e), Federal Rules of Civil Procedure, permits approval of a class action settlement if the settlement is "fair, reasonable, and adequate." *See Strube v. Am. Equity Inv. Life Ins. Co.,* 226 F.R.D. 688, 697 (M.D.Fla.2005) (Fawsett, J.). Approval is generally a two-step process in which a "preliminary determination on the fairness, reasonableness, and adequacy of the proposed settlement terms" is reached. *See* DAVID F. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed.2008). The factors considered are (1) the influence of fraud or collusion on the parties' reaching a settlement, (2) "the likelihood of success at trial," (3) "the range of possible recovery," (4) "the complexity, expense[,] and duration of litigation," (5) "the substance and amount of opposition to the settlement," and (6) "the stage of proceedings at which the

settlement was achieved." *Bennet v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984).

*Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009) (Merryday, J.).

The fact that the parties agreed to a "claims-made" settlement does not render its terms unreasonable. In fact, this Court approved a similar settlement recently in a non-WARN Act class action case styled *Bermudez v. Westgate Resorts, Inc. et al.*, Case No. 6:19-cv-01847-RBD-DCI (M.D. Fla. Nov. 23, 2020, Doc. 65, approving claims made settlement). Notably, the *Bermudez* settlement approved by this Court included a reversion of any unclaimed funds to the *Bermudez* defendant. Here no such reversion exists; no settlement funds in this case revert to Enterprise. If this settlement is approved by the Court, all funds will either be paid to the class members or to a *cy pres* recipient. *See also Atkinson v. Wal-Mart Stores, Inc.*, No. 08-cv-691-T-30TBM, 2011 WL 6846747, at *5 (M.D. Fla. Dec. 29, 2011) (approving claims-made settlement with full reversion).[1]

---

[1] *See also Saccoccio*, 297 F.R.D. at 696 (overruling objections to claims-made process because "[t]here is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (discussing claims-made settlement and affirming contingency fee award based on total possible recovery); *Shames v. Hertz Corp.*, 07-cv-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) (approving claims-made settlement over objections because "there is nothing inherently objectionable with a claims-submission process, as class action settlements often include this process, and courts routinely approve claims-made settlements") (citations omitted); *Lemus v. H & R Block Enters. LLC,* No. 09-cv-3179, 2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) (approving claims-made settlement where unclaimed funds reverted to the defendants).

### 1. **The Settlement Is Not the Product of Fraud or Collusion.**

In assessing this first factor, courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered. *Dorado v. Bank of Am., N.A.*, No. 1:16-CV-21147-UU, 2017 WL 5241042, at *5 (S.D. Fla. Mar. 24, 2017). There is no evidence of fraud or collusion here. The proposed settlement resulted from arm's length negotiations between Plaintiff and Defendants conducted by capable, experienced attorneys and with the assistance of a seasoned and respected mediator, Carlos Burruezo. "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014).

In fact, courts have consistently held that the presence of an independent mediator negates any suggestion of fraud or collusion. *See, e.g., Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *8 (S.D. Fla. Apr. 13, 2016) (use of mediator indicates there is "no suggestion of fraud or collusion"); *Hall v. Bank of Am., N.A.,* 2014 WL 7184039, at *6 (S.D. Fla. Dec. 17, 2014). There was no fraud or collusion in reaching the Settlement. During this process, the parties thoroughly evaluated their claims and defenses, allowing class counsel to negotiate what they believe is the most optimal settlement on behalf of the settlement class.

The absence of fraud and collusion is evidenced by a settlement reached after 1.5 years of heavy litigation at both the District Court and Eleventh Circuit,

including extensive motion practice, substantive and meaningful discovery on both the merits and as to the class, and also at the conclusion of lengthy mediation session.

Additionally, there is no evidence that Plaintiff sacrificed the interests of the Settlement Class for her own financial gain. Under the settlement, Plaintiff will receive the same settlement payment as the other members of the Settlement Class. There is no service award being sought by Benson.

In sum, the proposed settlement reached by Plaintiff and Defendants resulted from concessions and compromise by both sides. The settlement is a product of the functioning adversarial and negotiations processes, not fraud or collusion. Accordingly, the first factor supports approval of the settlement.

### 2. Litigating this Case Through Trial Would Continue to be Complex, Expensive, and Time-Consuming.

To be sure, this case has been enormously time-intensive and expensive for both sides already. Future litigation costs, including at both the District Court and Eleventh Circuit, cannot be predicted with certainty. There is no doubt if the litigation is to continue, Plaintiff and Defendants will vigorously advocate for their respective positions on various legal and factual issues, leading to continued significant motion practice and a likely trial. Trial and a potential of post-trial appeals further increases the costs and prolongs resolution.

Absent settlement, the resolution of factual issues relevant to each class member's claims would result in protracted litigation. The proposed settlement

will save considerable time and resources that would otherwise be spent litigating disputes resolved by the proposed settlement. Thus, this factor weighs in favor of approving the settlement proposed in the Stipulation of Settlement. *See Bennett,* 737 F.2d at 986 ("In addition, our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Ayers v. Thompson*, 358 F.3d 356, 2369 (5th Cir. 2004) (holding that settlement would avoid risks and burdens of potentially protracted litigation weighed in favor of approving settlement).

### 3. <u>Class Counsel Has Sufficient Discovery and Other Information to Realistically Value the Claims</u>.

The parties possess "ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. Specifically, Plaintiff has obtained sufficient discovery from Defendants to allow a well-informed and comprehensive settlement of the Class, including the thousands of documents produced by Defendants in this case along with deposition testimony of high-ranking Enterprise personnel. Plaintiff and Defendants have reviewed Defendants' records and discovery responses for the relevant time period, as well as the Class List, and determined that the Class consists of approximately 964 individuals, including Plaintiff. Defendant also identified and produced copies of documents, policies, and procedures that pertain to the allegations in the Amended Complaint.

In addition to the discovery described above, the parties have extensively analyzed legal authorities regarding WARN Act claims on a nationwide basis, particularly those involving the natural disaster exception under the WARN Act. Counsel for the parties have discussed their claims and defenses with each other.

As such, the parties believe that they have sufficient and meaningful information to reach a fair, reasonable, and adequate settlement. The Stipulation of Settlement was negotiated based on the parties' realistic, independent assessments of the merits of the claims and defenses in this case and should be approved.

### 4. Ultimate Success on the Merits of the Claims is Uncertain Given the Risks of Litigation.

When evaluating a proposed class action settlement, the court must balance the benefits of a certain and immediate recovery through settlement against the inherent risks of litigation. See *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984); *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Here, recovery under the Stipulation of Settlement is favorable for the 964 Class Members given the general uncertainty surrounding all litigation and the risks specific to this case.

If this litigation proceeds, Defendants intend to continue to vigorously defend the claims, and Plaintiff and the Settlement Class will face legal challenges by Defendants, including challenges to merits of their claims, a possible motion for decertification of the certified class and, of course, a Motion for Summary

Judgment. Any one of these challenges could significantly prolong the litigation at considerable expense to the parties and potentially result in no recovery for the class members. Each of these phases of litigation presents uncertainty and risks, which the settlement allows the parties to avoid.

Although Defendants denies liability and have asserted affirmative defenses to the claims, Defendants nevertheless recognize, as Plaintiff does, the costs and risks inherent in proceeding to trial.

A negotiated settlement that provides immediate relief is preferable to protracted litigation and an uncertain result in the future. Weighed against the risks associated with litigation, the proposed settlement is fair, reasonable, and adequate.

### 5. The Settlement is Fair in Light of the Possible Range of Recovery and Certainty of Damages.

The Stipulation of Settlement should be approved because the proposed settlement compares favorably to the limited range of damages available under the WARN Act that could potentially be recovered at trial. In her Complaint, Plaintiff seeks to recover 60 days' wages and benefits pursuant the WARN Act, 29 U.S.C. § 2104 (a)(1)(A). Public sources estimate that Enterprise Rent-A-Car employees earn $38,000 annually on average,[2] or $18 per hour. Using simple arithmetic the average class member's claim for 60-days wages is equivalent to approximately

---

[2] https://www.careerbliss.com/enterprise-rent-a-car/salaries/.

$5,900.00 if the person worked full-time.[3] Notably, most of the class members in this case only worked part time. Thus, this number would likely be reduced as a result. Moreover, while Plaintiff would argue that she and the class members are entitled to recover the full 60-days of wages made available under the WARN Act, Defendants would have argued that, instead, at most Plaintiff and the putative class were entitled to recover their back wages for the time notice should have been sent under the circumstances—in particular the uncertainty surrounding Covid-19 and related government closures and effects on the economy in early 2020. If accepted by the Court, this argument by Defendants could have reduced any back-pay award to Plaintiff and the Class Members to somewhere between just a few days' pay up to 30 days.

On the other hand, the settlement proposed in the Stipulation of Settlement secures a monetary payment estimated to be around $1,389.84 to each Settlement Class Member who timely submits a proper Claim Form, or more. This estimate is based on the average claims participation rate in class actions claims filing in consumer class actions "….where, using a similar notice and claims process, claims filing rates average 10% of the class." *Fla. Educ. Ass'n v. Dep't of Educ.*, 447 F. Supp. 3d 1269, 1275 (N.D. Fla. 2020) (citing *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, Federal Trade Commission*, 2019, at page 11). If this Motion is granted, net payments would be

---

[3] $38,000 annual salary / 52 weeks per year = $730.77 per week x 8 weeks (60 days' pay) = $5,846.15.

computed and total as follows: $175,000 gross settlement fund - $33,000 for claims administrator costs - $7,185.40 in litigation costs = $151,131.46 / 97 timely claims = $1,389.84 paid per timely claim form submitted.

The settlement proposed in the Stipulation of Settlement falls within the reasonable range of possible recovery for members of the settlement classes. For example, recently in a case styled *In re The Hertz Corporation, et al.*, Del. Bkt. Ct. Case No.: 20-11218-MFW (Doc. 5862), the United States Bankruptcy Court for the District Court of Delaware approved a WARN Act class action settlement for an amount per class member similar to that here. Similar to this case, the *Hertz* WARN Act litigation also revolved around a mass layoff engaged in by a rental car company around the time COVID-19 began. Also, just like in this case, in *Hertz* the two core defenses included the natural disaster exception and the unforeseeable business circumstance defense to the WARN Act's notice provision.

In sum, this is a fair settlement when taking in consideration the uncertainty of the underlying factors and elements critical to this case, establishing EHI and its operating groups collectively operated as a "single employer" as defined by the WARN Act, whether Enterprise would prevail on either the natural disaster exception and/or unforeseeable business circumstance (or both), and, of course, whether Plaintiff and the class members could establish liability. Indeed, "[a] proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex.

2010).  For these reasons, this factor also weighs in favor of the Court granting preliminary approval of the Parties' class action settlement.

### 6.    Class Counsel and the Parties Support the Settlement.

As evidenced by the Stipulation itself and the fact this Motion is unopposed, the terms of the Settlement Agreement as proposed have the obvious support of Plaintiff, Class Counsel, and Defendant.  Plaintiff and Defendant believe, based on their independent assessments, that settlement is in their respective best interest. Plaintiff and Class Counsel have likewise concluded that the proposed Settlement is in the best interest of the Class.

Furthermore, the parties anticipate that the Settlement will receive broad support from putative class members, especially considering that each individual member who timely files a claim will receive a settlement check that is reasonable and consistent in the context of class action litigation.

Importantly, the claims being released under the agreement are limited to WARN Act claims, or state law analogous WARN Act claims.  It is unlikely that settlement class members will oppose releasing their WARN Act claims which, in reasonable probability they never intended to bring individually—or, possibly still, were unaware existed.  Even if any class members do not agree with the terms of the proposed settlement, he or she is protected by the right to opt out of the proposed class settlement, which is made clear in the settlement agreement and the notice forms.  They may also object to the settlement and ask the Court to address any concerns they wish to raise.

The Parties believe that the Stipulation of Settlement represents a fair, reasonable, and adequate settlement. Consequently, the support of Plaintiff, Class Counsel, the class members (thus far), and Defendant weighs in favor of approving the settlement.

## IV. **The Notice of Class Action Settlement Should be Approved Because the Form and Manner of the Notice Satisfies the Requirements of Rule 23 and Due Process.**

The Notice of Class Action Settlement to be mailed to the Settlement Class is appended to the Stipulation of Settlement as Exhibit "2." *See attached,* Exhibit "A," Stipulation of Settlement, Exhibit "2." The notice in this case is very similar to the manner and form of notice this Court approved in *Bermudez v. Westgate Resorts, Inc. et al.*, Case No. 6:19-cv-01847-RBD-DCI (M.D. Fla. August 3, 2020, Doc. 49, pp. 3-4). The content of the proposed class notice and the method for notifying members of each settlement class satisfy the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and (e)(1) and comport with due process. Additionally, a website will be posted containing additional information about the Settlement and a portal through which claims may be filed.

Under Rule 23(e)(1), when approving a class action settlement, the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In addition, for classes certified under Rule 23(b)(3), courts "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule

23(c)(2)(B) also sets out the required contents of the class notice. *Id.* The notice provisions and notification procedures described in the Stipulation of Settlement comply with these Rules.

The proposed notice plan is reasonable and provides the best notice practicable to the respective settlement classes. *See Bermudez v. Westgate Resorts, Inc. et al.*, Case No. 6:19-cv-01847-RBD-DCI (M.D. Fla. August 3, 2020, Doc. 49, pp. 3-4, approving similar notice plan). Under the Stipulation of Settlement, the Notice of Proposed Class Action Settlement will be sent to each class member via first class mail to the last known addresses of class members based on information contained in Defendants' records or obtained by the third-party Settlement Administrator. *See* Exhibit "A," Stipulation of Settlement. Notice by mail is recognized as sufficient to provide due process to known affected persons as long as the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DeHoyos*, 240 F.R.D. at 296 (sending notice by mail is preferred when all or most class members can be identified). The Stipulation of Settlement also includes provisions to ensure that a reasonable effort is made to locate members whose notices are returned undelivered and to re-send the Notice of Proposed Class Action Settlement to these persons to the extent possible. *See* Exhibit "1," Stipulation of Settlement.

The content of the Notice of Proposed Class Action Settlement satisfies Rule 23(c)(2)(B) and due process requirements. "A settlement notice need only satisfy

the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litigation,* 628 F.3d 185, 197 (5th Cir. 2010). Due process is satisfied if the notice provides class members with "information reasonably necessary for them to make a decision whether to object to the settlement." *Id.*

The Notice of Proposed Class Action Settlement is written in language that is easy to understand. The Notice informs members of the Class of the nature of the case, the definition of the settlement class, and the claims and defenses. The Notice of Proposed Class Action Settlement also contain information regarding the right to retain their own attorney, their right to request exclusion from the class, the time and manner for requesting exclusion, and the binding effect of the class judgment. *See* Exhibit "A," Stipulation of Settlement, Exhibit "2," Notice; *see also* Fed. R. Civ. P. 23(c)(2)(B). Because the Notice of Proposed Class Action Settlement communicates the essential terms of the proposed settlement in a manner that complies with Rule 23(c)(2)(B) and due process, the Court should approve its distribution to the respective settlement classes.

**V. THE COURT SHOULD APPROVE A SCHEDULE AND PROCEDURES FOR A FAIRNESS HEARING, FILING CLAIMS, OPTING OUT, OBJECTING, AND FILING A MOTION FOR ATTORNEYS' FEES AND COSTS.**

Plaintiff requests that, in conjunction with preliminarily approving the Settlement, the Court schedule a fairness hearing to determine whether to finally approve the Settlement. Plaintiff also requests that the Court approve the deadlines and procedures the Stipulation of Settlement provides for filing claims,

opting out, objecting, and filing a motion for attorney's fees and costs, and class settlement administration costs. Under the Stipulation of Settlement, the schedule would be as follows:

| | |
|---|---|
| Defendant provides Class List to Settlement Administrator | No later than 7 days after Preliminary Approval Order is issued |
| Settlement Administrator establishes Settlement Website | No later than 7 days after Preliminary Approval Order is issued |
| Settlement Administrator mails Notice ("Notice Date") | No later than 7 days after receiving Class List |
| Deadline for Filing Claim | 60 Days after Notice is mailed by Settlement Administrator |
| Deadline for Objections | 60 days after Notice is mailed by Settlement Administrator |
| Deadline for Opt Outs (Exclusion Requests) | 60 days after Notice is mailed by Settlement Administrator |
| Deadline for Motion for Attorney's Fees and Costs, Class Settlement Administration Costs | 30 days after Notice is mailed to the Class |
| Deadline for Motion for Final Approval | 45 days after the Response Deadline (i.e., 105 days after notice is mailed) |
| Fairness Hearing | TBD by Court |
| Defendants deposit the full Settlement Fund | 7 days after Final Approval Date |
| Defendants deposit Court-approved attorneys' fees | 7 days after the Final Approval Date |

The procedures for opting out, objecting, and submitting claim forms are set forth in detail in the Stipulation of Settlement. Notably, this is a similar timeline

the Court approved in *Bermudez v. Westgate Resorts, Inc. et al.*, Case No. 6:19-cv-01847-RBD-DCI (M.D. Fla. August 3, 2020, Doc. 49, p. 6). Similarly, the procedures for filing a motion for attorney's fees and costs, and class settlement administration costs, are also included in the Stipulation of Settlement. Plaintiff respectfully requests that opt out and objection procedures be included in the Preliminary Approval Order. *See Johnson*, 2017 WL 6060778, at **2-3; *See also Almanzar*, 2015 WL 10857401, at **4-5. The Claim Form, which is attached as Exhibit "1" to the Stipulation of Settlement, requires only limited information (name, address, phone number, Claim Number) and a statement that the person submitting the form was in fact a job applicant included in the class definition. In total, the claims process is relatively simple and requires only minimal effort relative to the award that can be obtained.

## VI. <u>CONCLUSION</u>.

In sum, the Court should certify the settlement class and approve the Stipulation of Settlement on a preliminary basis because the proposed settlement is fair, reasonable, and adequate. Class counsel's attorneys' fees and costs are appropriate under Rule 23 for settlement purposes. The Notice of Proposed Class Action Settlement should be approved for distribution to the Settlement Class because it meets the requirements of Rule 23 and due process.

**WHEREFORE**, Plaintiff, Elva Benson, for herself and on behalf of the Class, moves the Court to approve Plaintiff's Unopposed Motion for Preliminary

Approval of Class Action Settlement and enter an Order of preliminary approval. A proposed Order is attached as Exhibit B.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(G)

The undersigned counsel conferred with counsel for Defendant regarding this Motion, and Defendant's counsel has no objection to the relief requested herein.

Dated: November 29, 2021.

/s/ Brandon J. Hill
**LUIS A. CABASSA**
Florida Bar No.: 053643
**BRANDON J. HILL**
Florida Bar No.: 37061
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnichols@wfclaw.com

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of November, 2021, the foregoing was electronically filed using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Brandon J. Hill
**BRANDON J. HILL**