UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ELVA BENSON, on behalf of
herself and on behalf of all others
similarly-situated,

    Plaintiff,

v.                            CASE NO.: 6:20-cv-891-Orl-37LRH

ENTERPRISE HOLDINGS, INC.,
and ENTERPRISE LEASING
COMPANY OF ORLANDO, LLC,

    Defendants.
_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT**

The Class Representative, Elva Benson ("Plaintiff"), in accordance with Fed.R.Civ.P. 23, files this Unopposed Motion seeking Final Approval of the Parties' Class Action Settlement. In further support thereof, Plaintiff respectfully submits the following:

## *Brief Summary*

On January 10, 2022, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendants. (Doc. 131). In that Order, the Court found that the Settlement terms are "fair, reasonable, and adequate." (*Id.*, p. 2, ¶ 2). Following entry of that Order, the Settlement Class Administrator sent a Notice of Settlement via email and first class mail to all

Settlement Class Members. (*See* Declaration of Snehal Indra from American Legal Claims Services, LLC, ¶ 5.) Thus far zero Class Members have objected to the Settlement. Similarly, only one exclusion/opt-out has been received.[1] Considering the size of the Class, coupled with the fact that more than 323 class members have filed valid claims so far (over 33% of the total class), and that no funds revert to Defendants, the Settlement is an excellent outcome. (*See* Declaration of Snehal Indra from American Legal Claims Services, LLC, ¶¶ 10-12.)

In sum, little has changed since the Court's Order granting the Plaintiff's Motions for preliminary approval of the same settlement, confirming that the settlement is fair, reasonable, adequate, and warrants final approval. After notice of the Settlement terms, the Settlement Class Members showed widespread support for that Agreement and nobody has objected to its terms. As a result, Plaintiff requests that the Court enter the Final Approval Order attached as Exhibit A. In further support of this Motion, Plaintiff respectfully submits the following:

## I. BRIEF OVERVIEW.

### A. Procedural Overview of the Litigation.

Before the settlement was reached, both sides extensively litigated this case for nearly 1.5 years, including at the Eleventh Circuit Court of Appeals. This action commenced on May 27, 2020, when Plaintiff filed her class action complaint, *Benson, et al., v. Enterprise Holdings, Inc. et al.,* Case No. 6:20-cv-

---

[1] Thus, Class Member Shana S. Nalls, should not be bound by the Parties' settlement as she timely opted-out.

2

891, in the United States District Court for the Middle District of Florida, Orlando Division. (Doc. 1 - the "Action"). In the Complaint, Plaintiff alleged that Enterprise Holdings, Inc. ("EHI") and Enterprise Leasing Company of Orlando, LLC ("Enterprise Orlando"), (collectively referred to as "Defendants" or "Enterprise") violated the WARN Act by terminating her and the class members without sufficient notice. Defendants have, at all times, denied Plaintiff's allegations and denied that they violated the WARN Act.

Defendants filed a Motion to Dismiss (*see* Doc. 32) the Complaint on August 3, 2020, disputing that Plaintiff had pled the three named Defendants constituted a "single employer" under the WARN Act. Additionally, Defendants argued that even if Plaintiff had pled the identity of her employer and sufficient facts to conclude that it was subject to the WARN Act and had engaged in a plant closing or mass layoff—Defendants were excused from the WARN Act's notice requirement under both the unforeseeable business circumstance defense and natural disaster exception to the WARN Act's notice requirement.

Plaintiff filed her Amended Complaint (*see* Doc. 35) on August 17, 2020, which mooted the first Motion to Dismiss. (*See* Doc. 36). Plaintiff's First Amended Complaint added as Named Plaintiffs Patrina Moore and Elizabeth Daggs. Both Daggs and Moore were later voluntarily dismissed (*see* Docs. 53 and 62) because it was later determined they worked at Enterprise facilities not covered by the WARN Act.

3

Defendants moved to dismiss (*see* Doc. 42) the First Amended Complaint on September 14, 2020, raising many of the same arguments and defenses included in its prior Motion to Dismiss—along with some others.

Defendants also filed a Motion to Stay discovery pending resolution of the Motion to Dismiss the First Amended Complaint. (Doc. 45). The Court denied the Motion to Stay Discovery on October 29, 2020. (Doc. 52). The Parties then engaged in extensive discovery efforts—and continued doing so throughout this litigation. Both sides propounded interrogatories and requests for production. Additionally, Plaintiff sought leave to (and the Court permitted her to pursue) jurisdictional discovery from Defendants. (Doc. 75). Both sides also took multiple depositions, including as to both the Parties and relevant witnesses. The Parties' extensive discovery efforts allowed both sides to fully develop the record in this case for both class certification purposes and, ultimately, to help ensure a well-informed settlement was reached.

In the interim, on January 4, 2021, the Court denied Defendants' Motion to Dismiss the First Amended Complaint. (Doc. 61). Defendants filed a Motion (*see* Doc. 69) to Certify for Interlocutory Review the Court's Order denying the Defendants' Motion to Dismiss the First Amended Complaint, which the Court granted by Order dated February 4, 2021. (Doc. 77). The Court certified the following question under § 1292(b): "What causal standard is required to establish that a plant closing or mass layoff is "due to any form of natural disaster" under the WARN Act's natural disaster exception, 29 U.S.C. § 2102(b)(2)(B)."

4

Defendants filed their 28 U.S.C. § 1292(b) Petition with the Eleventh Circuit on February 12, 2021. The Eleventh Circuit granted the Defendants' petition on June 4, 2021. On July 14, 2021, Defendants filed their Initial Brief with the Eleventh Circuit Court of Appeals. Additionally, the Defendants' brief was supported by several amici groups. Benson filed her Opposition Brief with the Eleventh Circuit on September 10, 2021. Benson also filed responses in opposition to each amicus brief filed in support of Defendants with the Eleventh Circuit.

Meanwhile, in these underlying District Court proceedings, Benson filed her Motion for Class Certification under Rule 23 on January 12, 2021. (Doc. 64). Defendants opposed Plaintiff's Motion for Class Certification (*see* Docs. 81-93), and also filed a Motion to Strike (*see* Doc. 80) the sworn declaration filed by Benson in support of her Motion for Class Certification. The Court denied the Motion to Strike filed by Defendants on March 15, 2021. (Doc. 101).

The Court heard oral argument on Plaintiff's Motion for Class Certification on April 1, 2021. (Doc. 106). On May 11, 2021, the Court granted Plaintiff's Motion for Class Certification and certified a nationwide class of approximately 964 persons who worked at various Enterprise locations around the country. Specifically, the Court certified (*see* Doc. 114, p. 26) the following class:

> All Enterprise employees who worked at or reported to Enterprise facilities in the United States and were terminated without cause on or about April 24, 2020, or within 14 days of April 24, 2020, or in anticipation of, or as the foreseeable consequence of, the mass layoff or plant closing ordered on or about April 24, 2020, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5), who

5

do not file a timely request to opt-out of the class, and who also did not sign a severance agreement with Enterprise.

On May 25, 2021, Defendants filed their Petition for permission to appeal pursuant to 23(f) with the Eleventh Circuit Court of Appeals the District Court's Order granting Plaintiff's Motion for Class Certification. Plaintiff opposed Enterprise's Rule 23(f) Petition. The Eleventh Circuit denied Defendants' Rule 23(f) Petition on June 23, 2021.

On September 14, 2021, the Parties participated in a Court-Ordered mediation with highly respected mediator, Carlos J. Burruezo. During mediation, and with Mr. Burruezo's assistance, the Parties were able to reach a settlement on a class basis, contingent upon this final agreement and the Parties' class action settlement being approved by the Court. (*See* Docs. 121, 122).

If granted final approval here, the Settlement provides for immediate relief to approximately 964 Settlement Class Members. Defendants will make available the gross sum of $175,000.00 into a common fund. That amount will be allocated among the approximately 964 class members equally on a pro rata basis based on the number of valid claim forms filed by class members after the cost of administration costs and litigation costs are deducted. No money from the Settlement Fund shall revert to Enterprise. For example, if the Net Settlement Fund is $150,000.00 and the total class members who file claims remains what it is today (323), the individualized Settlement Payment shall be $464.39.

In sum, based on the extensive record developed in this case, coupled with the experience and judgment of experienced class counsel, Plaintiff respectfully submits that the terms and conditions of this Agreement are fair, reasonable, and adequate. Thus, the Court should grant final approval of the settlement.

**B.     Mediation And Settlement Agreement.**

As explained above, on September 14, 2021, the Parties mediated this case with the assistance of mediator, Carlos J. Burruezo. The Parties' efforts culminated in a class-wide resolution that, if approved, will resolve the claims of each of the 964 Class Members. Importantly, the 964 class members who comprise the settlement class are the same class members who make up the Class Certified by this Court's order granting Plaintiff's Motion for Class Certification. The settlement class is defined as follows:

> **Settlement Class:**
> All Enterprise employees who worked at or reported to Enterprise facilities in the United States and were terminated without cause on or about April 24, 2020, or within 14 days of April 24, 2020, or in anticipation of, or as the foreseeable consequence of, the mass layoff or plant closing ordered on or about April 24, 2020, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5), who do not file a timely request to opt-out of the class, and who also did not sign a severance agreement with Enterprise.

**C.     The Court's Order granting Preliminary Approval of the Settlement.**

On January 10, 2022, this Court issued an Order preliminarily approving the Class Action Settlement Agreement between Plaintiff, on behalf of the Settlement Class, and Defendants. (Doc. 131). In that Order, the Court found that Settlement terms are "fair, reasonable, and adequate." (*Id.*, p. 2, ¶ 2). Following entry of that

Order, and as further explained by the attached sworn declaration from the Settlement Administrator, the Court-approved notice was mailed out to the Settlement Class Members in the manner described in the Settlement Agreement and approved by the Court.

**D.     The Class Member's Reactions to the Settlement.**

The Settlement Claims Administrator, American Legal Claim Services, LLC ("ALCS"), sent the short form Class Notice approved by the Court to each of the Settlement Class Members on January 20, 2022, via first-class mail. (*See* Indra Dec, ¶ 5 & Ex. A).

The Class Notice provided Settlement Class Members with all required information relating to the Settlement including: (1) a summary of the lawsuit and an overview of the nature of the claims; (2) the definition of the Settlement Class certified by the Court; (3) a clear description of the material terms of the Settlement; (4) an explanation of the claims being released; (5) an explanation of Settlement Class Members' rights; (6) instructions as to how to timely submit a claim form, including the date by which Class Members must do so; (7) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (8) the date, time, and location of the final approval hearing; (9) the internet address for the settlement website and the toll-free number from which Settlement Class Members could obtain additional information about the Settlement; and, (10) identification of Class Counsel and

information regarding the compensation that they would seek pursuant to the Settlement Agreement.

The Settlement website provided Settlement Class Members with access to the following documents: (i) the Long Form of Class Notice which explained the proposed Settlement in detail; (ii) Class Action Complaint; (iii) Class Settlement Agreement and Release, with exhibits; (vi) Motion for Preliminary Approval of Class Action Settlement, with exhibits; and (vii) Preliminary Approval Order. (*Id.* ¶ 8; *see also* www.bensonwarnsettlement.com). The Long Form of Notice included a set of Frequently Asked Questions ("FAQs") and answers about the Settlement. ALCS also set up a toll-free telephone support line that Settlement Class Members could call to obtain additional information. (*Id.* ¶ 9).

Thus, notice to the Class Members was sufficient and consistent with the Court's Order granting Preliminary Approval. The Settlement Class Members overwhelmingly accepted the Settlement. Thus far none have objected to the settlement, and only a single class member asked to be excluded. (*See* Indra Dec., ¶¶ 10-12). Not only that, so far over 33% of Settlement Class Members timely returned claim forms. (*See* Indra Dec., ¶¶ 10-12).

## II. MEMORANDUM OF LAW.

### A. Legal Standard for Final Approval of Class Action Settlements.

It is well established that settlements are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *Miller v. Rep. Nat'l. Life Ins. Co.*, 559 F.2d 426, 428 (5th

Cir. 1977). A district court, in reviewing a proposed settlement of a class action case must find that there has been no fraud or collusion between the parties in arriving at the proposed settlement and that the proposed settlement is "fair, adequate and reasonable." *See id*. at 428; *see also Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984); Rule 23(e)(2).

The Eleventh Circuit has previously outlined several factors that a court must consider in its determination of whether a proposed class-action settlement is fair, adequate, and reasonable: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *See Bennett*, 737 F.2d at 986. In weighing these factors, the Court may "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," Courts are often "hesitant to substitute its own judgment for that of counsel." *See Canupp v. Liberty Behavioral Health Corp*., 417 F. App'x 843, 845 (11th Cir. 2011) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

In addition, effective December 1, 2018, Rule 23 itself was amended to include certain final approval criteria for courts to consider, including whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and, finally, (D) the proposal treats class members equitably relative

to each other. *See* Fed. R. Civ. P. 23(e)(2). For the reasons discussed below, the application of the recently amended Rule 23(e) factors, as well as the analogous *Bennett* factors, unquestionably demonstrates that the Parties' proposed settlement is fair, adequate, and reasonable under the circumstances of this case.

B.     **The Class Has Already Been Certified on a Preliminary Basis.**

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (Doc. 131). Since the Court's Preliminary Approval Order, no objections addressing class certification were received. Thus, there is no reason to re-visit the Court's prior ruling on these issues. Pursuant to Fed.R.Civ.P. 23(e), the Court should grant final approval of the settlement.

C.     **Notice to the Class under Fed.R.Civ.P. 23(e)(1).**

Under Fed.R.Civ.P. 23(e), Courts typically first analyze the notice to the class. *See* Fed.R.Civ.P. 23(e)(1). As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

11

Here, the Settlement Administrator, ALCS, exceeded these requirements by sending out the Court-approved short form version of the notice to all class members via U.S. Mail. That notice included all information required by Fed.R.Civ.P. 23(e)(1) and 23(c)(2)(B), including a link to the long-form version of the notice as well as the 1-800 informational number, along with all of the other required information previously approved by the Court. (*See* Indra Dec., ¶¶ 5-9). Thus, notice was sufficient. *See also Petersen v. Am. Gen. Life Ins. Co.*, No. 3:14-CV-100-J-39JBT, 2019 WL 11093816, at *4 (M.D. Fla. Oct. 22, 2019).

### D. Final Approval is Appropriate Under Fed.R.Civ.P. 23(e)(2).

Next, as set forth above, under Rule 23(e)(2), Courts address whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here, and the Court should enter a Final Order approving the Class Action Settlement Agreement.

#### 1. The Class Representative and Class Counsel Have Adequately Represented the Class.

There is no question that the Class Representative, Elva Benson, and the undersigned have adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law*

*Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Elva Benson, is adequate given that her interests are equivalent to those of the Settlement Class. She was actively involved in this case from its inception, including by providing input as to the Complaint, participating in discovery (including sitting for two separate depositions), attending oral argument via Zoom as to the Motion for Class Certification, and also attending the Zoom mediation. Furthermore, there is also no obvious conflict of interest between Ms. Benson and the Settlement Class. She, along with her counsel, secured a six-figure settlement from highly sophisticated Defendants in favor of the class members she represents.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the previously filed declarations by class counsel, *see* Docs. 130-3, 64-13 (Hill Decls.), 64-14 (Cabassa Decl.).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *See, e.g., Hugo on behalf of BankAtlantic Bancorp, Inc. v. Levan,* No. 08-61018-CIV, 2011 WL 13173025, at *10 (S.D. Fla. July 12, 2011)("The view of the attorneys actively conducting the

13

litigation regarding the appropriateness of a proposed settlement is "entitled to significant weight"); *see also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 635 (6th Cir. 2007) ("In deciding whether the settlement is fair, reasonable, and adequate, the Court must look to the opinions of class counsel and class representatives."). Simply put, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2. The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before A Neutral Mediator.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed, arm's-length, and at times contentious, negotiations between the Parties and their counsel.

Not only that, the Parties used a highly respected mediator in this case, Carlos J. Burruezo, one of the most respected mediators in Florida, whose involvement also supports finding the Settlement fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2)(B), Committee Notes on Rules–2018 Amendment ("[T]he involvement of a neutral or court- affiliated mediator … may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests"); *accord Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015); *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was warranted because it was overseen by "an experienced and well-respected mediator"). The Parties and counsel were well-

14

informed of the potential strengths (and weaknesses) of their positions, and conducted good-faith negotiations in an effort to avoid costly and protracted litigation.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val v. Buccaneers Ltd. P'ship,* No. 8:14-cv-01182-CEH, 2015 WL 3776918, at *2 (M.D. Fla. June 17, 2015) ("[C]ourts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.,* 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3. The Settlement Provides Adequate Relief to the Class Members.

The relief to Settlement Class Members also satisfies the third Rule 23(e)(2) factor. As explained above, Defendants will make available the gross sum of $175,000.00 into a common fund. That amount will be allocated among the approximately 964 class members equally on a pro rata basis based on the number of valid claim forms filed by class members after the cost of administration costs

and litigation costs are deducted. So, if the Net Settlement Fund is $150,000.00 and the total class members who file claims remains what it is today (approximately 323), the individualized Settlement Payment shall be $464.39. This recovery falls well within the range of reasonableness for settlement purposes. *See, e.g., Molina v. Ace Homecare LLC,* No. 8:16-CV-2214-T-30TGW, 2019 WL 3225662, at *1 (M.D. Fla. June 28, 2019), *report and recommendation adopted*, No. 8:16-CV-2214-T-27TGW, 2019 WL 3219931 (M.D. Fla. July 17, 2019)(approving class action settlement in which WARN Act class members receive 500 net payments); *see also Philips v. Munchery Inc.,* No. 19-CV-00469-JSC, 2021 WL 326924, at *2 (N.D. Cal. Feb. 1, 2021) (approving class action settlement in which WARN Act class members receive $831 net payments). Accordingly, the negotiated relief is more than adequate, and should be approved.

Additionally, the United States Bankruptcy Court for the District Court of Delaware approved a WARN Act class action settlement for an amount per class member similar to that here in a recent case styled, *In re The Hertz Corporation, et al.*, Del. Bkt. Ct. Case No.: 20-11218-MFW (Doc. 5862). Similar to this case, the Hertz WARN Act litigation also revolved around a mass layoff engaged in by a rental car company around the time COVID-19 began. Also, just like in this case, in Hertz the two core defenses included the natural disaster exception and the unforeseeable business circumstance defense to the WARN Act's notice provision.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiff being unable to

16

establish liability was also present because of numerous defenses asserted by Defendants, which may have resolved the case on summary judgment and trial. There was also risk of failing to establish liability based on the pending interlocutory appeal to the Eleventh Circuit of Defendants' natural disaster defense. Each of these remaining phases of the litigation posed serious risks, which the Settlement allows Named Plaintiff and the Settlement Class to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

In sum, the *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Settlement Agreement, the Class Members can quickly realize a portion of their possible damage claims from the Settlement Fund, even if the amount is less than what could have been recovered through successful litigation. Likewise, Defendants cap their exposure at less than the minimum it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation. The Named Plaintiff also supports the Settlement, as do the Class Members— evidenced by the lack of objections.

### 4. The Proposal Treats Class Members Equitably Relative to Each Other.

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably. In fact, they are treated identically, which also cuts in favor of final approval of the Parties' class actions settlement.

17

## 5. The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all. Moreover, Defendants would have appealed any judgment entered against them, resulting in further expense and delay. Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992). By entering into the Settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal. Thus, the remaining *Bennett* factors are satisfied here.

## E. The Remaining Factors Under Fed.R.Civ.P. 23(e)(3)-(5) are Satisfied.

In accordance with Fed.R.Civ.P. 23(e)(3), the parties have filed at Doc. 130-1, the Settlement Agreement for which they seek final approval. This is the only agreement the parties have made in connection with this Settlement.

Similarly, Fed.R.Civ.P. 23(e)(4) is satisfied by the 60-day notice period during which class members were given sufficient time to be excluded and/or object.

And, finally, Fed.R.Civ.P. 23(e)(5), which sets out the applicable procedures for evaluating objections, is also satisfied here because, in fact, to date there have been no objections to the Settlement made. Thus, each of these factors also weigh in favor of the Court granting final approval of the Parties' class action settlement.

### III.   CONCLUSION.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion. A proposed Order is attached as Exhibit A.

### IV.   CERTIFICATE OF GOOD FAITH.

In good faith, Plaintiff's counsel certifies that in conformance with Local Rule 3.01(g), he conferred with Defendants' counsel about the issues raised in Plaintiff's Motion. Defendants do not oppose the relief requested herein.

Dated this 22th day of March, 2022.

Respectfully submitted,

/s/ *Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar Number: 053643
**BRANDON J. HILL**
Florida Bar Number: 0037061
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
***Attorneys for Plaintiff and the Class***

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of March, 2022, caused a true and correct copy of the foregoing to be filed using the Clerk of Court's CM/ECF system, which then caused a notice of electronic filing on all Counsel of Record.

/s/ *Brandon J. Hill*
**BRANDON J. HILL**